22

United States District Court
Southern District of Texas
FILED

MAY 0 9 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| INTERNATIONAL SHIPBREAKING LIMITED, L.L.C. | § § § | C.A. NO. B-01-048 |
| VS. | § § § § | In Admiralty Pursuant to Rule 9(h) of the Federal Rules of Civil Procedure |
| SMITH L.C. & SMITH MARITIME, in personam, TUG ELSBETH II, her engines, tackle, etc., *in rem* | § § § | |

**PLAINTIFF/COUNTER DEFENDANT'S RESPONSE AND BRIEF
IN OPPOSITION TO DEFENDANT/COUNTER-PLAINTIFF'S
<u>DEMAND FOR COUNTER-SECURITY</u>**

Comes now **International Shipbreaking Limited**, Plaintiff/Counter-Defendant (hereinafter *"ISL"*) and makes this, its Response and Brief in opposition to the demand for counter-security of Smith L.C. and Smith Maritime *in personam*, and ELSBETH II, *in rem* (hereinafter collectively referred to as *"Smith"*) and in support thereof would respectfully show as follows:

1. **<u>Background</u>**

1.1. ISL is a shipbreaking and dismantling business operating at the Port of Brownsville, Texas. ISL has a contract with the United States Department of the Navy to transport and dismantle certain decommissioned U.S. Naval vessels. Early this year, ISL entered into a towing contract with Smith, whereby Smith undertook with tug ELSBETH II a tandem tow of two decommissioned U.S. Navy guided missile destroyers, the ex-USS STODDERT and ex-USS COCHRANE from Pearl Harbor, Hawaii to Brownsville, Texas. During the voyage, the ex-USS STODDERT sank. On March 22, 2001, ISL arrested tug ELSBETH II based upon a complaint sounding in breach of warranty, negligence, gross negligence and/or intentional acts in the sinking the ex-STODDERT. Counsel for

48937:967114.1:050901

ISL and the tug negotiated the release of ELSBETH II for security in the amount of $1 million dollars.

**1.2.** In addition to and as part of its original answer, Smith filed its Counter-Claim for breach of the tow contract alleging ISL's failure to pay the last installment of the tow contract due plus expenses allegedly caused by the unseaworthiness of the ex-STODDERT for the total sum of three hundred thousand dollars ($300,000.00).

## ISSUE TO BE RULED UPON

**1.3.** Smith presently demands security in the amount of $400,000.00 pursuant to E7(a) of the Supplemental Rules of Certain Admiralty and Maritime Claims. Smith alleges in its demand that pursuant to Rule 7(E)(a)....proceedings on the original claim *"must"* (emphasis ours) be stayed until this security is given unless the Court directs otherwise. In this response and brief, ISL would show that ordering counter-security is in fact <u>discretionary,</u> and that based on the facts and the applicable law, Smith's demand for counter-security should be denied. Alternatively, ISL would show that the amount of counter-security requested is excessive in relation to the amount of counter-claim that could be legitimately asserted by Smith.

**2.** <u>Standard of Review: Counter-security provided for in Supplemental Admiralty Rule E(7) is discretionary, notwithstanding the presence of the words *"shall"*.</u>

**2.1.** Presently at issue before this Court is the following provision of Supplemental Admiralty Rule E(7).

> **(7) Security on Counter-Claim.** Whenever there is asserted a counter-claim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counter-claim, **unless** the

> Court, **for cause shown** (emphasis ours), shall otherwise direct; and proceedings on the original claim shall be stayed until such security is given, unless the Court otherwise directs...

2.2. Counter-security provided for in the above rule is discretionary, notwithstanding the presence of the words *"shall"*. <u>Expert Diesel v. Yacht "Fishin Fool"</u>, 627 F.Supp. 432 (S.D. Fla. 1986). Three guiding principles govern the district court's discretion: (a) the parties should be *"equal"* as regards security; (b) plaintiff is not so burdened as to discourage or frustrate his bringing suit, *Id. at 433*; and (c) whether Plaintiff, by the posting of counter-security, seeks to release its property from the Counter-Plaintiff's custody. <u>Afram Lines Int'l, Inc. v. M/V CAPETAN YIANNIS</u>, 905 F.2d 347 (11th Cir. 1990).

### A. <u>Ordering counter-security does not the place parties on equal footing.</u>

A.1. The district court's broad discretion derives from the purpose of Rule E(7) which is to place parties on equal footing regarding security, <u>not</u> to inhibit plaintiff's prosecution of its suit as a maritime lien holder. <u>Washington-Southern Navigation Co. v. Baltimore and Philadelphia Steamboat Co.</u>, 263 U.S. 629 44 S.Ct. 220, 68 L.Ed. 480 (1924) - discussing predecessor Admiralty Rule 50; and <u>Seaboard & Carribean Transport Corp. v. HafenDampfschiffart Ag. Hapag - Hadac Seebaderdienst,</u> 329 F.2d 538 (5th Cir. 1964) - same. This discretion derives from the admiralty courts being the purest form of equity. *Fishin Fool, <u>supra</u> at 433..*

A.2. In the *"Fishin Fool"* case, a local diesel mechanic arrested the vessel for failure to pay for certain work on the vessel's engines. The mechanic obtained security for his claim and the vessel moved for counter-security. After reviewing the discretionary standard set out above, the District Court reviewed the paramount concern in admiralty that requiring counter-security can have a deterrent effect on the enforcement of maritime liens on the use of the already expensive

procedures of maritime arrest and attachment. The District Court, citing *Professor Moore* stated, *"A district court should move with caution...and should be particularly reluctant to compel a party to post counter-security where that party is not attempting to secure the release of any property."* *See also 7A J. Moore, Moore's Federal Practice, §E.15 at E-738 (2d Ed. 1983).* The imposition of such a duty may inequitably and unjustifiably burden maritime lien claimants, such as ISL. Determination must be made on a case by case basis. *Fishin Fool, supra at* 433.

   **A.3.** In the present circumstances, Plaintiff, ISL is a local scrapyard at the Port of Brownsville. *See Exhibit "A", the Affidavit of Barry Chambers, Co-Chief Operating Officer of International Shipbreaking Limited, L.L.C.* It is a small business, with neither a vessel to be seized nor assets subject to maritime seizure since it does business and can be found within the Southern District of Texas[1]. Defendant, on the other hand, has Florida as its principal place of business yet it has a fleet of oceangoing tugs doing business all over the world. Defendant has a policy of ocean Protection and Indemnity (P&I) insurance which Plaintiff relied upon in hiring Smith in the event of a casualty during the tow. *See Exhibit "A".* In fact, it was Smith's P&I insurance (by and through its counsel) that arranged for and posted the bond for release of the ELSBETH II. Furthermore, ISL does not have insurance which can cover the damages caused by the loss of the es-USS STODDERT. *Exhibit "A".* An order from this Court for ISL to post bond which ISL cannot comply with and the resulting discharge of Smith's security for ISL's inability to comply would have chilling effect on ISL's prosecution of its claims through the mechanism of maritime lien enforcement, which the Admiralty Courts and *Professor Moore* were concerned with. *Fishin Fool, supra at 433 and Moore, supra at E-738.* Simply put, an order by this Court for the posting

---

[1] Supplemental Admiralty Rules B and C

of counter-security would not place the parties on equal footing, but rather have the opposite effect, placing Smith in an advantageous position over ISL.

**B.  ISL should not be compelled to post counter-security when it is not attempting to release its own property.**

**B.1.**  In *Afram Lines Int.'l, Inc. v. M/V CAPETAN YIANNIS*, 905 F.2d 347, 11th Cir. 1990), the district court ordered counter-security which exceeded the amount of security.  The Eleventh Circuit vacated the district court's order of counter-security.  In its opinion, the Eleventh Circuit affirmed the discretion of the district court to order counter-security, citing the Florida District Court's sound reasoning in *Fishin Fool* but stated that the Court should be reluctant to order counter-security if the plaintiff does not, by the posting of the counter-security, seek to release its own property from the counter-plaintiff's custody.  Cited with approval in *Goudy & Stephens, Inc.*, 665 F.Supp. 67, 71 (D.Me. 1987).  The Eleventh Circuit again cited *Professor Moore*:

> "Compelling the posting of any security by a party who has no property whose release he is attempting to secure is contrary to our judicial system."
>
> *Moore, E-738, 2nd Ed. 1983.*

In the present case, ISL, if forced to post counter-security, would not be posting security to release any property because ISL's property has not been seized nor capable of being seized in Admiralty.

**B.2.**  In arriving at its conclusion, the Eleventh Circuit held that the district court should determine whether the counter-plaintiff could initially have brought its claim in rem or quasi in rem. In the present situation, Smith could not and cannot seize under a warrant of maritime seizure any of ISL's property.  First, under Supplemental Admiralty Rule C, there is no vessel to seize.

Additionally, Smith could not seize property under Admiralty Rule B, because ISL is a Texas concern doing business and can be found within Brownsville, in the Southern District of Texas.[2]

**B.3.** Additionally, the Court should consider the Plaintiff's financial ability to post counter-security. In the present situation, it is highly unlikely ISL can obtain security. See *Exhibit "A"*. The Eleventh Circuit held that where the first two circumstances are present, the district court should not order counter-security. As stated by the Eleventh Circuit,

> "The already burdensome costs of commencing an *in rem* or *quasi in rem* proceeding may be escalated beyond the reach of some plaintiffs."

As the Court is well aware, in addition to the cost of attorneys' fees associated with the flurry of work surrounding an arrest and court filing fees, ISL was required to put up a $5,000 deposit payable to the U.S. Marshal to effect the arrest. ISL has also incurred substitute custodianship expenses which it undertook itself because it could do so less expensive than the U.S. Marshal or other substitute custodians at the Port of Brownsville.

**C.** **The consequences of ordering counter-security that ISL is unable to post.**

**C.1.** ISL also brings to the attention of the Court a Fifth Circuit case which affirmed the district court's order of counter-security. However, the case is clearly distinguishable, and under the Fifth Circuit's guidance in *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400 (5th Cir. 1987), this Court should deny Smith's request for counter-security. In *Titan*, the plaintiff was a large corporate supplier of computer software/hardware which arrested a vessel. When the vessel owner moved for counter-security, the Court did not receive evidence that the plaintiff could not post security nor that it was not on an equal footing with the defendant. The Court approached the issue

---

[2] A prerequisite to seize property under Supplemental Admiralty rule B is that the Defendant cannot be found within the District.

in this manner: If the plaintiff was required to post counter-security and it could not do so, and the Court relieved Defendant of its security obligation, the Plaintiff would lose the primary security posted by the vessel owner (in this case, Smith). The Fifth Circuit looked at the trial court's decision and found that in the event plaintiff could not or would not post security, its rights would be adequately protected by its *in personam* action against the defendants. This is clearly not the situation in the present case. Because of the sheer economic impact the loss of the STODDERT has had on ISL's business, it is quite frankly, uncertain whether it has the credit a surety company would look at to put up a bond requested by Smith. *Exhibit "A"*. ISL's viability as a business to contract to scrap navy vessels is at stake because of this incident, and so is the entire Navy dismantling program itself. *Exhibit "A"*.

C.2. In this case, tug ELSBETH II is currently for sale on the open market through Marcon vessel brokers at a price of $3.2 million dollars. See *Exhibit "B"*. If it is sold without ISL's security remaining in place, ISL will have no property against which it can satisfy its maritime lien, if successful at trial. Additionally, if the evidence shows the loss of the STODDERT is found to be intentional or criminal, Smith's P&I insurance likely excludes from coverage such intentional, grossly negligent or criminal acts. The bond currently on file is therefore critically important to ISL's ability to preserve the integrity of the maritime lien mechanism and collect a judgment against Smith.

D. **Conclusion**

D.1. As set forth in the holdings of the cited cases, ISL urges this Court to consider the evidence of whether there is harm to the sanctity and efficacy of maritime liens if ISL cannot post counter-security and loses its own security as a result thereof. ISL is a small, local company which

would have never entered into this contract with Smith had it known it could not look to the credit of the tug ELSBETH II in entering into the contract of tow. Alternatively, Smith is not entitled to the amount of counter-security requested, as can be demonstrated by testimony at the hearing on this matter.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff/Counter-Defendant ISL prays that the Court deny Defendant/Counter-Plaintiff Smith's Demand for Counter-Security and for all other relief, at law, equity or in admiralty, to which Plaintiff/Counter Defendant ISL shows itself justly entitled.

Respectfully submitted,

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**

By: _____
James H. Hunter, Jr.
State Bar of Texas No. 00784311
Federal I.D. No. 15703
Ewing E. Sikes, III
State Bar of Texas No. 00794631
Federal I.D. No. 19534
Attorneys for Plaintiff,
**INTERNATIONAL SHIPBREAKING LIMITED, L.L.C.**

Of Counsel:

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**
P.O. Box 3509
Brownsville, Texas 78523-3509
Telephone: (956) 542-4377
Telecopier: (956) 542-4370

# CERTIFICATE OF SERVICE

I hereby certify that on the \_\_9th\_\_ day of **MAY, 2001**, a true and correct copy of the foregoing served via **FACSIMILE** on the following counsel of record:

Mr. Jeff Bale and Mr. Justin Renshaw
Eastham, Watson, Dale & Forney, L.L.P.
20th Floor, Niels Esperson Building
808 Travis Street
Houston, TX 77002

_____
Of ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| INTERNATIONAL SHIPBREAKING LIMITED, L.L.C. § § § VS. § § SMITH L.C. & SMITH MARITIME, in personam, TUG ELSBETH II, her engines, tackle, etc., *in rem* § § § | C.A. NO. B-01-048  In Admiralty Pursuant to Rule 9(h) of the Federal Rules of Civil Procedure |

## AFFIDAVIT OF BARRY CHAMBERS

STATE OF TEXAS §
§
COUNTY OF CAMERON §

**BEFORE ME**, the undersigned notary public personally appeared **BARRY CHAMBERS**, known to me to be the person whose name is subscribed hereto, who being first duly sworn in the manner provided by law, on oath stated as follows:

I am the Co-Chief Operating Officer for International Shipbreaking Limited, L.L.C. (*"ISL"*) and I am over the age of 18 years and am competent to testify to the facts set forth below as stated in ISL's Response and Brief in opposition to Smith Maritime's demand for counter-security:

1. ISL is a Texas Limited Liability Company which operates a shipbreaking/dismantling business at the Port of Brownsville. ISL's principal place of business is Brownsville, Texas.

2. When entering into the towing contract, ISL negotiated with a recognized, and what it believed to be, financially stable Florida towing company that had insurance and a vessel (i.e. Tug ELSBETH II) against which ISL could satisfy a claim in the event of a casualty;

48937:967146.1:050801



EXHIBIT
A

2.  ISL is a small business and the damages caused by the loss of the STODDERT has had a significant financial impact on the company.

3.  The loss of the STODDERT could potentially put ISL out of business if it doesn't recover it's damages and/or loses it's contract with the Navy because of this incident;

4.  ISL does not believe it has the credit and/or financial stability a surety would look to in guaranteeing a bond for counter-security;

5.  If the Court ordered counter-security for $400,000, ISL may very well have to drop it's lawsuit against Smith because of the cost in addition to other expensive costs related to the initial arrest and seizure, and further litigation costs.

I have read the attached Response and Brief in opposition to the demand for counter-security of Smith L.C. and Smith Maritime *in personam*, and ELSBETH II, *in rem* and the foregoing factual statements are true and correct to the best of my personal knowledge:

_____
BARRY CHAMBERS

SUBSCRIBED AND SWORN TO BEFORE ME on this the  9th  day of MAY, 2001.



Gloria Gamez
Notary Public
State of Texas
My Commission Expires
June 25, 2004

_____
Notary Public in and for the State of Texas

My Commission Expires: June 25, 2004

# Marcon International, Inc.

**For Sale**

Recent News | Newsletters | Market Reports | Sales Reports | Library | About Marcon | Home



For Sale
- Vessels for Sale
- Barges for Sale
- Transcoastal Marine
- Vessel/Barge Inquiry

Charters
New Construction
All Listings
List Your Vessel
Get Tow Quote

Search for a Vessel or Barge by file number. Enter file No.: [____] Go

Last Update: 12-Apr-01
**Vessel Specifications**  🖨 Print Friendly Page
Available for:  ✉ Contact Us
Sale, Charter  📄 View Flyer

## File No. TG60110

**Tug - Triple Screw**
Flag:          U.S.
Built:         1987          Rebuilt:
Builder:       Jacksonville, FL
Price:         On Request
Inspection:    U.S. Southeast
Delivery:      mid march 2001



**Dimensions**
LOA:     110.0 ft.     Length (Reg):
Beam:    41.0 ft.
Depth:   16.0 ft.
Draft:   11.0 ft. light     14.0 ft. loaded
Dwt:            Lt. Disp:
G / NRT: 139.0  /  95.0

**Classification**
ABS Loadline

**Capacities**
Deck Cargo:
ClearDeck:
Hold Cap
No. Holds:
Hatch Sizes:
No. Hatches:
FO: 110,000           LO: 8,000g
FW: 8,000g            BW:
DW:                   Dry Bulk:
Liq Mud:              Brine/CaCl:

**Deck Machinery**
Windlass:
Anchors:    2 x 7000 lbs.
Chain/Wire:  /
Crane:      2 Ton Hydralic
Derrick:
Winch:      Double Drum
Linepull:   200,000 #   Wire: 2-2000' 2.25"
Stern roller:

**Navigation / Communications**
Gyro:      A/P:       Radar:      DF:
SSB:       VHF:       Satcom:     GMDSS:
GPS:       Loran:     Fathometer:
Steering:

**Accommodations**
Quarters:   14 berths
Passengers:
Air Cond:       Galley:
Walk-in Cooler/Freezer:

**Propulson**
Engines:    3 x Wartsila  Type 8R22.
            96" korts. Vessel
            tanked/piped for IFO.
BHP:        5100
Gears:      4.4:1
Shafts:     9"
Props:      96"
Korts:      Y
Speed:
Consumption:
Bowthruster:    Thrust:
Bollard Pull:

**Aux. Machinery**
Pumps:
Generators:  2-70kW, 1-30kW
Firefighting:
Aux:

**Remarks:** Upper pilot house with 55' eye level 1000 liters/day watermaker. Range 30 days towing/60 days utility works. See photos on our website. Luxury yacht-like tug with good towing record. Presently working on dredging projects. As brokers only, we invite your best firm cash offers to test.

🖨 Printer Friendly Page    ✉ Contact Us    📄 View Flyer

Details believed to be correct, but without guarantee. Offered subject to availability.

Marcon International, Inc. P.O.Box 1170, 9 NW Front Street, Coupeville, WA 98239 USA
Phone: 360-678-8880 | Fax: 360-678-8890 | Telex: ITT 4931464MARCUI.



EXHIBIT B