

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 14 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| INTERNATIONAL SHIPBREAKING LIMITED, L.L.C. | § § § § | |
| V. | § § | C.A. NO. B-01-048 (ADMIRALTY) |
| SMITH L.C. & SMITH MARITIME, *In Personam*, and the TUG ELSBETH II, her engines, tackle, and gear, etc., *In Rem* | § § § § | |

## MEMORANDUM AND BRIEF IN SUPPORT OF DEMAND FOR COUNTERSECURITY

Claimant/Defendant/Counter-Plaintiff Smith Maritime, for its Memorandum and Brief in Support of its Demand for Countersecurity, states as follows:

### I.
### INTRODUCTION

The issue presently before the court arises out of a simple set of circumstances: an alleged maritime tort and an alleged breach of maritime contract, both related to the towage and sinking of the Ex-USS STODDERT. International Shipbreaking Limited, L.L.C. ("ISL") claims that Smith Maritime committed a maritime tort due to the sinking and Smith Maritime claims ISL is obligated to pay its tow bill. Because Smith Maritime posted security for ISL's claim and because Smith Maritime's counterclaim arises out of the same transaction and occurrence made the basis of the original action, Smith Maritime is entitled to countersecurity from ISL.

### II.
### COUNTERSECURITY

The rule in cases such as this is clear:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for

> cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given, unless the court directs otherwise.

*Rule E(7)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims.*[1] The Rule applies even when the counterclaim is not based in admiralty. *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400 at 402 (5th Cir. 1987). As a result, the availability of *in rem* or *quasi in rem* proceedings in admiralty on the counterclaim is of no consequence. *Id.*

As the Fifth Circuit explained, "[t]he concept of countersecurity is found in the first promulgation of rules in American admiralty courts, and it has continued to date with little substantive change." *Id.* The practice was first promulgated in 1868 and remains a part of the equitable bedrock of courts in admiralty so that parties are not unnecessarily prejudiced in pursuing their respective claims. However, "[a]lthough the language of the rule is automatic, it is not absolute, for the original seizing complainant may be excused by the court 'for cause shown.'" *Id.* at 403. In exercising its discretion with respect to "cause shown", district courts in the Fifth Circuit are

> guided by the essential and equitable purposes of the rule . . . [weighing] the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection.

*Id.* at 404. To illustrate the appropriateness of countersecurity in this case, perhaps it is best to examine cases in which a defendant-counterclaimant has *not* been ordered to post countersecurity. They are: 1) cases in which seamen act to enforce their "privileged position" as wards of the court (see, e.g., *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629 (1924)); 2) cases in which a party is financially unable to post countersecurity (see, e.g., *The Beaumont*, 8 F.2d 599 (4th Cir. 1925)); and 3) cases in which the counterclaim is frivolous or "so lacking in merit that the court can only conclude that the counterclaim was advanced solely to

---

[1] As amended April 17, 2000, effective December 1, 2000. ISL references an older, superseded version of Rule E(7) in its brief.

19,645/1PSLS5105 JWR.1PSLS5106 JWR Brief.doc

secure a negotiating advantage over the complainant." *Titan Navigation*, 808 F.2d at 404. Clearly this case does not involve a claim by a seaman nor does it involve a frivolous counterclaim.[2] However, ISL does claim, in a roundabout way, that it does not have the financial wherewithal to post the countersecurity demanded of it. Such a position is highly suspect and borders on the absurd.

### A. ISL is financially able to post countersecurity

ISL has sued Smith Maritime over a profit expectancy of $1.3 million dollars for dismantling the Ex-USS STODDERT.[3] It is hard to comprehend how ISL, as one of but a handful of shipbreakers in the United States, could claim that it does not have the financial resources to post countersecurity for a claim that it is obligated to pay irrespective of its tort claim. Captain Latham Smith has provided an affidavit, attached hereto as Exhibit A, which clearly evidences the fact that ISL represented to Smith Maritime that the United States Navy had advanced funds to ISL sufficient to pay the entire amount owing under the tow contract. But for Smith Maritime's confidence in both its defense and counterclaim, a motion for leave to file an amended counterclaim asserting fraud may be in order. In any event, the Fifth Circuit has made it more than clear that "financial difficulties would not automatically excuse the countersecurity requirement." *Titan Navigation*, 808 F.2d at 404 (citing *Seaboard & Carribean Transp. Corp. v. Hafen-Dampfschiffahrt*, 329 F.2d 538 (5th Cir. 1964)).

### B. Ordering countersecurity will not release Smith Maritime's bond

Despite protestations from ISL that ordering countersecurity will somehow make it less secure in its original claim, the simple fact is that a ruling by the court requiring countersecurity will

---

[2] ISL essentially admits that Smith Maritime's counterclaim is legitimate, albeit excessive in its opinion. See *ISL's Response and Brief in Opposition to Smith Maritime's Demand for Counter-Security* at 2.

[3] However, the merits of the original claim are highly suspect since ISL has no proprietary interest in the Ex-USS STODDERT other than a contractual expectancy - - the United States Navy owned the vessel. See *State of Louisiana v.*

not release the bond Smith Maritime has posted. If countersecurity is required, both parties will be able to proceed in the prosecution and defense of their respective claims unburdened by the possibility that a judgment will have no meaning.

### C. ISL may still prosecute its claims

ISL has asserted both *in rem* and *in personam* claims. Although ISL claims many things, it cannot claim that its sole remedy in this case is against the vessel. ISL fails to appreciate that the vessel is no longer the security for its claim but that the bond is its security. Absent an order from the court releasing the bond, ISL's security will remain in place. However, assuming that the court did release Smith Maritime's bond,[4] ISL would still be able to attempt to prosecute the *in personam* claim. *Titan Navigation, Inc.*, 808 F.2d at 405. ISL attempts to downplay the viability of its *in personam* relief by circuitously and repetitively arguing that ISL has no funds and that its business is in jeopardy. Surely the value of an *in personam* claim does not hinge on the Plaintiff's financial stability, but on the financial stability of the defendant against whom the claim is asserted. Ordering countersecurity alone will have no effect on ISL's security or on its *in personam* claims.

### III.
### CONCLUSION

"[T]he purpose of Rule E(7) is to equalize, where not otherwise inequitable, the positions of the plaintiff and defendant with respect to security." *Result Shipping Co., Ltd. v. Feruzzi Trading USA Inc.*, 56 F.3d 394 at 400 (2nd Cir. 1995). The balancing of equities "favors the ordering of countersecurity when a defendant whose property has been attached asserts a non-frivolous counterclaims growing out of the same transaction." *Id.*

---

*M/V TESTBANK*, 752 F.2d 1019 (1985) (holding that there can be no recovery in admiralty for mere economic loss absent physical damage to a proprietary interest).

[4] Although ISL has attempted to characterize this issue otherwise, Smith Maritime is *not* asking the court at this time to release the bond it posted for ISL's claim, but only to require that ISL post countersecurity.

ISL's argument regarding countersecurity is convoluted, puerile and without basis in law or fact. One of the expected consequences of proceeding *in rem* is that a demand for countersecurity could be made for a counterclaim arising out of the same occurrence or transaction as the original claim. One of the expected consequences of entering into a contract is that the parties will do what they agree to do. Smith Maritime lived up to its end of the bargain whereas ISL is attempting to turn the sinking of Navy property into its own gain.

The admiralty rules were created long ago and their "function is to regulate the practice of the court and to facilitate the transaction of its business." *Washington-Southern Nav. Co.*, 263 U.S. at 635. As should be clear from ISL's insistence against it, without countersecurity Smith Maritime will have no meaningful remedy for its claim. There is no general danger to parties seeking to enforce *valid* maritime liens in other cases if ISL is required to post countersecurity in this case as such a measure would only put the parties in equal positions with respect to their claims. Countersecurity will test the mettle of each claim and will create the best circumstances in which both parties can pursue their claims.

WHEREFORE, PREMISES CONSIDERED, Smith Maritime respectfully requests that the Court order International Shipbreaking Limited, L.L.C. to post countersecurity pursuant to Supplemental Rule E(7) and the demand made by Smith Maritime and for any such further relief to which Smith Maritime may be justly entitled.

Respectfully submitted,

Jeffrey R. Bale
State Bar No. 01629800
S.D. Tex. Adm. I.D. No.
Justin W. R. Renshaw
State Bar No. 24013392
S.D. Tex. Adm. I.D. No. 25865

808 Travis Street, 20th Floor
Houston, Texas 77002
Telephone:   (713) 225-0905
Facsimile:   (713) 225-2907

*Attorneys in Charge for Smith Maritime*

OF COUNSEL:

EASTHAM, WATSON, DALE, & FORNEY, L.L.P.

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I forwarded a true and correct copy of the foregoing to all counsel of record on this the 11th day of May, 2001.

**Via CM/RRR # 7000 1670 0005 7051 5507**
**Facsimile 956-542-4370**
James H. Hunter, Jr.
Ewing E. Sikes, III
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
P.O. Box 3509
Brownsville, TX 77523-3509

_____
Justin W. R. Renshaw

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| INTERNATIONAL SHIPBREAKING LIMITED, L.L.C. | § § § § | |
| V | § § § | C.A. NO. B-01-048 (ADMIRALTY) |
| SMITH L.C. & SMITH MARITIME, *In Personam*, and the TUG ELSBETH II, her engines, tackle, and gear, etc., *In Rem* | § § § § | |

## AFFIDAVIT OF LATHAM SMITH

| | | |
|---|---|---|
| STATE OF FLORIDA | § § | KNOW ALL PERSONS BY THESE PRESENTS |
| COUNTY OF CLAY | § | |

I, Latham Smith, being first duly sworn on oath, depose and say:

I am the Owner of Smith Maritime, Claimant/Defendant/Counter-Plaintiff in the above-captioned matter, and I am fully competent to make this affidavit for and on behalf of Smith Maritime;

Smith Maritime entered into a contract with Plaintiff/Counter-Defendant, International Shipbreaking Limited, L.L.C. ("ISL") for the towage of two decommissioned United States Navy guided missile destroyers, the Ex-USS STODDERT and the Ex-USS COCHRANE (the "Contract");

ISL agreed to pay Smith Maritime a total of more than $600,000.00 for the towage under the contract and also agreed to pay additional expenses incurred incident to the towage. To date, all amounts owing and outstanding under the contract total $300,566.42, exclusive of interest and other consequential damages;

Mr. Bob Berry, C.O.O. of ISL, represented to me prior to commencement of the voyage at issue in this lawsuit that the United States Navy had advanced funds to ISL to pay Smith Maritime all amounts due under the contract;

In the event ISL does not post counter-security for Smith Maritime's counterclaim, Smith Maritime will be unduly burdened with the costs of collection and may possibly be without remedy whatsoever;

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing information is true and correct.

Latham Smith

SWORN TO AND SUBSCRIBED TO BEFORE ME under my hand and official seal of office this 11 day of May, 2001.

Notary Public, State of Florida



SUSAN J. HARDY
MY COMMISSION # CC 739378
EXPIRES: May 4, 2002
Bonded Thru Notary Public Underwriters



EXHIBIT
A