44

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 0 4 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| INTERNATIONAL SHIPBREAKING LIMITED, L.L.C. | § § | |
| Plaintiff | § § | |
| V. | § § | C.A. NO. B-01-048 (ADMIRALTY) |
| | § § | |
| SMITH L.C. & SMITH MARITIME, *In Personam*, and the TUG ELSBETH II, her engines, tackle, and gear, etc., *In Rem* | § § § | |
| Defendants. | § | |

## SMITH MARITIME'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

Smith Maritime, for its Reply to Plaintiff's Response to Defendant's Motion for Final Summary Judgment, states as follows:

## I.
## INTRODUCTION

In its Response to Smith Maritime's Motion for Final Summary Judgment, International Shipbreaking Limited, L.L.C. ("Plaintiff" or "ISL"), undoubtedly fails to appreciate the certainty of the Fifth Circuit's "bright line" rule with respect to the type of damages it claims. There are still no genuine issues of material fact with respect to ISL's claims and Smith Maritime remains entitled to judgment as a matter of law on its defense.

ISL's contentions regarding Smith Maritime's breach of contract claim also fail to raise genuine issues of material fact. None of the purported issues of fact rise to a level sufficient to defeat summary judgment and Smith Maritime remains entitled to judgment as a mater of law on its counterclaim as well.

## II.
## ARGUMENT AND AUTHORITIES

### A. The "Bright Line" Rule of Robins Dry Dock and its Progeny Applies to this Case

ISL claims that the rule of <u>Robins Dry Dock v. Flint</u>, 275 U.S. 303 (1927), as interpreted by the Fifth Circuit, does not apply to this case for three reasons: 1) "ISL's complaint alleges intentional tort"; 2) ISL had functional ownership of the ex-USS STODDERT; and 3) The contract between Smith Maritime and ISL somehow takes the casualty out of the reach of the rule. *See* ISL's Response to Smith Maritime's Motion for Summary Judgment at p.4-5. None of these allegations, viewed independently or as a whole, raise genuine issues of material fact sufficient to defeat summary judgment in favor of Smith Maritime.

### i. ISL's attempt to claim Smith Maritime committed an intentional tort fails to preclude summary judgment

A simple glance at the Plaintiff's complaint shows that ISL does not allege any intentional torts against Smith Maritime. *See* ISL's Complaint, Docket Entry No. 1, p. 1 (pleading that "[t]he Plaintiff's claim is for negligence and breach of the warranty of workmanlike service" alone). ISL attempts in its response to raise an issue of fraud, yet such an allegation does nothing to raise a fact issue with respect to application of the rule of <u>Robins Dry Dock</u>, even assuming fraud were properly pled. In any event, Plaintiff should not be allowed to rely on its after-the-fact pleading of fraud/intentional tort, whatever it may be, to defeat this summary judgment. <u>Euromin, Inc. v. Coastal Cargo Co., Inc.</u>, 1996 WL 109291 at 3 (E.D. La. 1996).

The law is reluctant to recognize claims based solely on harm to the interest in contractual relations or business expectancy. Such harm is precisely what ISL claims by this lawsuit. Absent evidence that Smith Maritime intentionally interfered with ISL's contract with the Navy, its business expectancy, ISL cannot recover. <u>Dick Meyers Towing Service, Inc. v. U.S.</u>, 577 F.2d 1023 (5th Cir. 1978). *See also* <u>Kaiser Aluminum v. Marshland Dredging Co.</u>, 455 F.2d 957 (5th Cir. 1972). ISL

has produced *no* evidence in this respect. As one Court has adroitly pointed out in a collision case where the rule of <u>Robins Dry Dock</u> was in issue on alleged intentional conduct generally:

> *One example of the consequences of blurring the distinction will suffice to suggest the lack of wisdom inherent in doing so: If the rule were modified, the results would be that the tortfeasor who intentionally collides with a cruise ship would be liable to each entertainer scheduled to perform during the period while the ship is laid up for repairs and liable to each passenger who had purchased a non-refundable airplane ticket he could not use because of the ship's delay in reaching port.*

<u>Nautilus Marine, Inc. v. Niemela</u>, 989 F.Supp. 1229, 1233 (D. Alaska 1996), aff'd 170 F.3d 1195 (9th Cir. 1999).

As to Plaintiff's thinly veiled attempt to inject a fraud allegation into the mix, the evidence in opposition to the pending summary judgment motion does nothing to indicate that Smith Maritime committed "fraud in the inducement", i.e., that Smith Maritime fraudulently concealed its intent to sink the STODDERT during negotiations leading up to the execution of the Towcon with ISL. Additionally, assuming *arguendo* that Smith Maritime defrauded ISL during the performance of the contract, such conduct would nevertheless constitute a breach of contract, meaning that ISL would only be entitled to contractual, not tort, remedies.

There is no dispute that Smith Maritime intended to expedite the sinking of the STODDERT. However, it borders on the absurd to claim that fraud (or some other as yet unidentified intentional tort) caused the STODDERT to sink. The only evidence ISL has regarding the cause of the sinking is the summary judgment affidavit of Paul Torres. *See* Exhibit A to ISL's Response. Smith Maritime objects to the inclusion of Mr. Torres' affidavit in the summary judgment record and moves that it be stricken as speculative, conclusory, and riddled with hearsay. Should the Court consider the affidavit as proper summary judgment evidence, it nevertheless fails to raise issues of material fact that would preclude summary judgment in favor of Smith Maritime.

If anything, Mr. Torres' affidavit indicates nothing more than simple negligence surrounding the sinking. *See* Exhibit A to ISL's Response (stating, for example, that the Captain's "actions, maneuvers, powering the vessel and seamanship in general did not demonstrate he had sufficient tug/tow experience." and "When the Captain released the tow line, he lost control of his starboard tow winch"). As a result, there is no genuine issue of material fact with respect to whether Smith Maritime committed an intentional tort that caused the sinking and therefore Smith Maritime is entitled to judgment as a matter of law.

### ii. ISL never had an ownership interest in the ex-USS STODDERT

The United States Navy owned the ex-USS STODDERT at the time it sank. *See* Exhibit A, the "Declaration of Captain Lawrence M. Jones", NAVSEA Program Manager for Inactive Ships Program Office, attached hereto and incorporated by reference for all purposes. ISL relies heavily on the Fifth Circuit decision in <u>Bosnor v. L.A. BARRIOS</u>, 796 F.2d 776 (5th Cir. 1986) and claims that the Court's decision in that case supports its alleged ownership interest in the present case. *See* ISL's Response at p. 7. Nothing could be further from the truth. <u>Bosnor</u> is a case involving a claim by the actual owner of steel cargo against the bareboat (demise) charterer of a barge and others for the loss of the cargo during ocean transit. <u>Bosnor</u>, 796 F.2d at 778-779. The bareboat charterer of the barge (Reyna International, Inc.) maintained that it was entitled to recover its expenses and lost profits relating to the casualty from the owner of the tug (Slatco, Inc) and the stevedoring company responsible for loading the barge (Walton & Sons Stevedoring & Contracting Co., Inc.). <u>Id.</u> at 782-783. In the present case, the only contract governing ISL's right to take possession of the STODDERT is essentially a services contract. *See* Exhibit A to Smith Maritime's Amended Motion for Final Summary Judgment (the "Navy Contract"), Section B-1 - Contract Type Summary (stating "[t]his is an indefinite-quantity indefinite-delivery contract for the supplies or services specified"). To hold that a services contract merely entitling the contractor to possession of the res for a limited

purpose is the functional equivalent of a bareboat charter would corrupt the nature of the demise itself.

The standard for determining a bareboat charter is whether the owner of the vessel, here the U.S. Navy, "completely and exclusively relinquished possession, command and navigation to the demisee." Guzman v. Pichirilo, 369 U.S. 698, 699 (1962). A bareboat charter "is therefore tantamount to, though just short of, an outright transfer of ownership. However, anything short of such a complete transfer is a time or voyage charter party or not a charter party at all." Id. at 700. Under the terms of the Navy/ISL contract, there is no genuine issue of material fact as to what exactly ISL was to do with the STODDERT. *See* the Navy Contract, Section C1-1 - Scope of Work. ISL's assertions of de minimus examples of the means to an end (the dismantling and sale of the scrap on behalf of the Navy) fail to create *any* proprietary interest in the STODDERT. The Navy Contract merely relates the manner in which the job is to be accomplished and Bosnor is inapplicable either by analogy or implication. As a result, there is no genuine issue of material fact with respect to ISL's alleged ownership interest in the STODDERT and Smith Maritime is entitled to judgment as a matter of law.

### iii. ISL's contract with Smith Maritime fails to defeat summary judgment

Robins Dry Dock involved the claim of a charterer who had lost revenue under a time charter because the Robins Dry Dock damaged a propeller on the ship BJORNEFJORD, causing a delay of two weeks for the completion of drydocking. Robins Dry Dock, 275 U.S. at 307. The U.S. Supreme Court found that even though the Plaintiff/charterer had a contract with respect to the vessel, the contractual relationship was not enough to give the charterer a proprietary interest sufficient to make a claim for damages arising out of damage to the vessel. Id. at 309. Despite ISL's pleading to the contrary, the import of the contractual relationships in this case, or any case in which the rule of Robins Dry Dock applies, is not a factor of privity with the alleged tortfeasor but

of the legal relationship of the Plaintiff to the vessel or property that has been damaged. *See, e.g.,* Reserve Mooring v. American Commercial Barge Line, 251 F.3d 1069, 1071 (5th Cir. 2001). Stated succinctly, ISL was to take possession of the STODDERT, scrap it, and sell the scrap as an independent contractor of the U.S. Navy. *See* the Navy Contract, Section C1-1 - Scope of Work. Such simplistic task orders in no way rise to the level of ownership and the "bright line" rule applies.

ISL only claims purely economic losses related to an economic expectancy in the dismantling and scrapping of the STODDERT. *See* ISL's Complaint p.1-2 ("Plaintiff, International Shipbreaking Limited, L.L.C. was to receive under contracts approximately two million dollars from the U.S. Navy to dismantle both vessels.")  Absent ISL's economic expectancy, it would have no damages. ISL attempts to create some sort of an issue with respect to its damages by claiming that the damages it has suffered include expenses and overhead, presumably out-of-pocket. *See* Exhibit B to ISL's Response, the Affidavit of Robert Berry at p. 2 (declaring that "The bulk of the money under the contract is for expenses and overhead of ISL, not profit.").  Assuming ISL has suffered actual economic, out-of-pocket loss, it *still* cannot recover such losses absent physical damage to its property.  There can be *no* recovery for purely economic damages when the Plaintiff has not suffered corresponding physical damages to property in which it has a proprietary interest. Louisiana v. M/V TESTBANK, 752 F.2d 1019, 1032 (5th Cir. 1985); Reserve Mooring, 251 F.3d at 1072. Because there is no genuine issue of material fact with respect to ISL's relationship with the STODDERT, summary judgment in favor of Smith Maritime is wholly appropriate.

### B. Smith Maritime's Breach of Contract Claim is Irrefutable

It is axiomatic that a cause of action for breach of a maritime contract requires proof of: 1) the existence of the contract; 2) breach; and 3) damages. In addition, the owner of the tug is not an insurer, and the mere loss of the tow raises no presumption of fault. Stevens v. THE WHITE CITY,

285 U.S. 195 (1932). Before an accident may amount to fault, error of a master must be gross and flagrant, and a tug will be held for lack of seamanship or breach of warranty of workmanlike performance only when the conduct is outside the range of possible discretion. THE FRED SMARTLY, JR., 100 F.2d 971, 974 (4th Cir. 1939); THE IMOAN, 67 F.2d 603, 605 (2d Cir. 1933). *See also*, Shebby Dredging Co., Inc. v. Smith Bros., Inc., 469 F.Supp. 1279, 1285 (D. Md. 1979) (discussing hindsight). In any event, even assuming Smith Maritime was somehow negligent, which is expressly denied, such negligence would not allow ISL to withhold the balance due under the Towcon. Offshore Co. v. G&H Offshore Towing Co., Inc., 262 F.Supp. 282, 288 (S.D. TX 1966) (finding tug negligent but allowing recovery for admittedly withheld tow hire). ISL throws the Court a red herring in discussing the reasonableness of the invoices for Smith Maritime's tow hire. The TOWCON provided for a fixed amount to be paid to Smith Maritime. ISL has not paid that fixed amount. *See* the Testimony of Bob Berry, Exhibit F to ISL's Response, p. 11, l. 21-22; p. 12, l. 7-9 and p. 24, l. 2-16. There is no genuine issue of material fact with respect to Smith Maritime's counterclaim against ISL and Smith Maritime remains entitled to judgment as a matter of law on its counterclaim as well.

### III.
### CONCLUSION

ISL fails to raise any issue of material fact in its Response. The simple facts remain that 1) ISL did not own the STODDERT and therefore cannot recover for its loss and 2) that ISL owes Smith Maritime the balance of its negotiated tow hire.

WHEREFORE, PREMESES CONSIDERED, Smith Maritime respectfully requests that this Court enter a final judgment that ISL take nothing by its suit and that Smith Maritime be awarded its costs incurred in its defense. Further, Smith Maritime prays that this Honorable Court adjudge and decree that ISL is liable in all respects for the counterclaim herein, including

attorneys' fees, interest, and costs, and for all other and further relief, both in law and in equity, as this Honorable Court may deem just.

Respectfully submitted,

_____
Jeffrey R. Bale
State Bar No. 01629800
S.D. Tex. Adm. I.D. No.
Justin W. R. Renshaw
State Bar No. 24013392
S.D. Tex. Adm. I.D. No. 25865
Niels Esperson Building, 20th Floor
808 Travis Street
Houston, Texas 77002
Telephone:   (713) 225-0905
Facsimile:    (713) 225-2907

*Attorneys in Charge for Claimant/Defendant, Smith Maritime*

OF COUNSEL:

EASTHAM, WATSON, DALE, & FORNEY, L.L.P.

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I forwarded a true and correct copy of the foregoing to all counsel of record on this the 31st day of August 2001.

**VIA CM/RRR #   7099 3220 0005 1493 7430**
**and FACSIMILE:  956/542-4370**
James H. Hunter, Jr.
Ewing E. Sikes, III
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
P.O. Box 3509
Brownsville, TX  77523-3509

_____
Jeffrey R. Bale

PAGE 8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| INTERNATIONAL SHIPBREAKING LIMITED, L.L.C. | § | C.A. NO. B-01-048 |
| VS | § | In Admiralty Pursuant to Rule 9(h) of the Federal Rules of Civil Procedure |
| SMITH LC & SMITH MARITIME, in personam, TUG ELSBETH II, her engines, tackle, etc., *in rem* | § | |
| | § | |
| | § | |

## DECLARATION OF LAWRENCE M. JONES

| | |
|---|---|
| WITH THE U.S. ARMED FORCES | § |
| ON BOARD | § |
| WASHINGTON NAVY YARD, DC | § |

1.   My name is **Lawrence M. Jones**. I am a Captain in the United States Navy and currently assigned to Naval Sea Systems Command (NAVSEA) as the Program Manager for Inactive Ships Program Office. I have personal knowledge of the facts contained herein

2.   The Navy owned the ex-BENJAMIN STODDERT (DDG-22), at the time it sank while under tow to the Brownsville, Texas, facility of International Shipbreaking Ltd. for demolition under NAVSEA Contract No. N00024-99-C-2319.

I swear under penalty of perjury that the foregoing is true and correct.

Further Declarant sayeth naught.

_____
LAWRENCE M. JONES
CAPTAIN, U.S. NAVY

**EXHIBIT A**