46

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| INTERNATIONAL SHIPBREAKING LIMITED, L.L.C. | § § § | C.A. NO. B-01-048 |
| VS. | § § § § § | In Admiralty Pursuant to Rule 9(h) of the Federal Rules of Civil Procedure |
| SMITH L.C. & SMITH MARITIME, in personam, TUG ELSBETH II, her engines, tackle, etc., *in rem* | § | |

United States District Court
Southern District of Texas
FILED

SEP 0 7 2001

Michael N. Milby
Clerk of Court

## ISL'S RESPONSE TO SMITH'S REPLY TO ISL'S RESPONSE TO SMITH'S MOTION FOR FINAL SUMMARY JUDGMENT

Comes now, Plaintiff, **INTERNATIONAL SHIPBREAKING, LIMITED, L.L.C.** (hereinafter *"ISL"*) and makes this its Response to Smith Maritime's (hereinafter "Smith's") Reply to ISL's Response to Smith's Motion for Final Summary Judgment, and in support thereof would respectfully show as follows:

I.

### SUMMARY OF SMITH'S RESPONSE

1.1     In its latest reply, Smith alleges the following: (1) ISL's attempt to claim Smith committed an intentional tort fails to preclude summary judgment; (2) ISL never had an ownership interest in the ex-U.S.S. Stoddert; (3) ISL's contract with Smith fails to defeat summary judgment; and (4) Smith's breach of contract claim is irrefutable.

II.

### SUMMARY OF ISL'S REPLY

2.1     ISL summarizes its responses to Smith's arguments that summary judgment should be denied for four independent reasons in the sequence argued by Smith:

48937:981421.1:090701

A. Contrary to Smith's latest reply, ISL's complaint alleges and uses the word "intentional acts" in its complaint. The rule of Robins Dry Dock has no application to intentional torts.

B. Contrary to Smith's latest reply, the issue in this case is not whether ISL owned the ex-U.S.S. Stoddert, but rather, whether ISL had a <u>proprietary interest</u> as recognized by the U.S. Supreme Court and U.S. 5th Circuit. The summary judgment evidence as viewed under the 5th Circuit decisions on point establish that ISL had a proprietary interest in the ex-U.S.S. Stoddert sufficient to maintain a claim.

C. The rule of Robins Dry Dock and the 5th Circuit's application of the Rule has only applied where there is no contractual relationship between the tortfeasor with respect to the property damaged. In this case, ISL contracted directly with the alleged tortfeasor, (Smith) with respect to the property actually damaged.

D. Maritime law is well established that the towing vessel cannot validly exculpate itself from liability in a towing contract for its own negligence in straight towage situations, such as the present. Therefore, the summary judgment evidence creates numerous fact issues with respect to fault, what was contracted for, the benefit of the bargain and the details of the charges.

III.

**ARGUMENT AND AUTHORITIES**

**A. Plaintiff's Original Complaint alleges alternative causes of action including intentional acts. The rule of Robins Dry Dock and 5th Circuit progeny do not apply to intentional torts.**

3.1   In its original verified Complaint on file herein, ISL alleged that the Stoddert was lost "and/or intentionally scuttled..."due to the negligence and breach of warranty of workmanlike service

provided by Smith and further that Smith was negligent and breached the warranty of workmanlike service in abandoning an endangered tow (Stoddert) without using all reasonable efforts to salvage her. *The Court is requested to take judicial notice of Plaintiff's Verified Complaint (Page 2, Paragraph IV) on file among the papers of this action.* Thus, there are two distinct theories of recovery alleged by ISL recognized by Maritime law: (1) The conduct of Smith in causing the collision was negligent and/or a breach of the warranty of workmanlike service implied in towing contracts to prudently navigate the flotilla; and (2) the conduct in scuttling the vessel was intentional, negligent and/or a breach of warranty and legal obligation not to scuttle a tow and/or not to abandon an endangered tow without using all reasonable efforts to salvage her. *Young Bros. V. Cho*, 183 F.2d 1950 (9th Cir. 1950). The rule of Robins Dry Dock as correctly stated in Smith's Motion for Summary Judgment applies to <u>unintentional</u> in maritime torts. *Page 4, Paragraph II.A., Smith's Motion for Summary Judgment.* ISL's summary judgment evidence clearly establishes a fact issue with regard to the intentional nature of Smith's acts. *Exhibits "A", "B" and "C" to ISL's Response.* An intentional act by the Defendants has been alleged, thus taking the claims out of the Robins Dry Dock parameters. *Showa Line, Limited v. Diversified Fuels, Inc.,* 1991 U.S. Dist. Lexus 14662 at 3(E.D.L.A.). Since Smith continues to insist there is no intentional act alleged in Plaintiff's Complaint (despite the wording of Paragraph IV, Page 2 of the Complaint) ISL has contemporaneously herewith filed a Motion for Leave to Amend the Complaint to clarify the intentional acts alleged and add a claim for fraud based on the conduct of Smith in scuttling a vessel not in danger of sinking based on false information and attempting to cover the same up. *Exhibit "A" to ISL's Response, the affidavit of Paul Torres.* Contrary to Smith's contention that Torres' affidavit is "replete with hearsay", the fact is the evidence of intentional and fraudulent acts came

from the master of the tug, Captain Kern, and the principal of Smith Maritime himself, Latham Smith. *See Exhibit "A" to ISL's Response.* Such statements are not hearsay; they are party admissions and statements against interest F.R.E., 804(b)(3).

3.2 Without any supporting law, Smith argues that even if Smith defrauded ISL during the performance of the contract, such conduct would nevertheless constitute a breach of contract, "meaning that ISL would only be entitled to contractual, not tort, remedies". Contrary to such a bold legal statement, fraud is a <u>tort</u>.

3.3 In support of its responsive contention that Robins Dry Dock is too bright of a Rule to except from its grasp intentional torts, the only law Smith can come up with is a 9th Circuit affirmation of a District of Alaska decision in which there is dicta about the ramifications of the Robins Dry Dock rule to a cruise line passenger ship. *See Nautilus Marine, Inc. v. Niemela*, 989 F.Sup. 1229, 1233 (D. Alaska 1996), affirmed 170 F.3d 1195 (9th Circuit 1999). Hedging its inconsistent arguments, Smith also cites two 5th Circuit cases for the proposition that absent evidence that Smith intentionally interfered with ISL's contract with the Navy, ISL cannot recover. Smith, citing *Dick Meyers Towing Service, Inc. v. Capital U.S.*, 577 F.2d 1023 (5th Circuit 1978). See also *Kaiser Aluminum v. Marshland Dredging Company*, 455 F.2d 957 (5th Circuit 1972). As the Court will find after reading these decisions, those cases have absolutely no application to the present case.

**B. The issue in this case is not whether ISL owned the ex-U.S.S. Stoddert, but whether ISL had a <u>proprietary interest</u> recognized by Robins Dry Dock and 5th Circuit progeny.**

3.4 ISL has never contended that it owned the ex-U.S.S. Stoddert. The plain wording of Robins Dry Dock and 5th Circuit progeny established a rule which requires a "proprietary interest" (not ownership) in damaged property prior to maintaining a claim for economic damages. Moreover, it

appears from Smith's response there is a fundamental disagreement over the holding in *Bosner v. L.A. Barrios*, 796 F.2d, 776 (5th Circuit 1986). Indeed, there are several parties, claims and cross-claims from several claimants in that opinion as described by the 5th Circuit. However, the portion of the opinion that applies on point to the facts in this case is as follows: The Bareboat Charter of the barge (Reyna International, Inc.) maintained that it was entitled to recover its expenses and lost profits relating to the casualty caused by the operator of the tug (Slatco, Inc., and others). On page 783 of the Opinion, the Court discusses the Bareboat Charterer of the barge which was damaged and lost cargo overboard, sought recovery against the tug company it hired to move the barge and cargo. Supra at 783. In the present case, ISL also hired Smith to tow the ex-STODDERT and ex-COCHRANE, both vessels ISL was contractually and physically responsible for. See Exhibits "D" and "E", to ISL's Response, copies of the TOWCON and Navy contract, respectively. In Bosner, the 5th Circuit accurately framed the question presented as follows:

> whether (the Plaintiff) had a significant sufficient proprietary interest in the barge "to escape the grasp Robina (sic) and Testbank" *Bosner Supra at 783.*

The Court found that it did. Id, at 783.

3.5     Smith categorizes ISL's summary judgment evidence as "de minimas examples of the means to an end" and that the Navy contract merely "relates the manner in which the job is to be accomplished..." A fair and impartial reading of the contract, the summary judgment affidavits and testimony at the last hearing demonstrate that the Navy turned over this vessel in full to ISL to see it to the grave at ISL's yard in Brownsville. *See Exhibits B, C, E and F to ISL's Response.* The Navy never resumed possession, custody or control as ISL was in possession, custody and control of the vessel such as her sister, ex-U.S.S. COCHRANE, until the sheer pieces of metal were removed

48937:981421.1:090701                                -5-

and there was nothing left at ISL's dock. Such evidence far exceeds the proprietary interest in Reyna's bareboat charter of the barge in <u>Bosner</u>. Please refer to ISL's discussion on pp. 7-9 of ISL's Response to Smith's Motion for Summary Judgment.

**C. The TOWCON between ISL and Smith gives ISL something that <u>Robins Dry Dock</u> never had but <u>Bosner</u> did: a direct contract with a tortfeasor concerning property damaged.**

3.6    In Paragraph III of Smith's Reply, Smith states that "the import of the contractual relations in this case, or in any case in which the rule of Robins Dry Dock applies, is not a factor of privity with the alleged tortfeasor but of the legal relationship to the Plaintiff to the vessel or property that has been damaged." In the present case, ISL had contracts with the Navy and Smith concerning the property in issue which alone clearly established ISL's proprietary interest in the ex-STODDERT. Nevertheless, Smith's argument further illustrates the fundamental disagreement between ISL and Smith with respect to this issue: the Robins Dry Dock rule has <u>never</u> applied to a case in which the Plaintiff had a direct contractual relationship with the tortfeasor with respect to the property damaged/lost. Therefore, Robins Dry Dock does not apply, or, as better stated by the 5th Circuit's decision in the *Bosner* case: The bareboat charter of the barge (a proprietary interest) which hired the tug (tortfeasor) "escaped the grasp of Robins Dry Dock". *Bosner, Supra at 783.*

**D. A towing vessel cannot validly exculpate itself from liability for its own negligence in straight towage situations. Therefore, the summary judgment evidence creates numerous fact issues with respect to what was contracted for, the benefit of the bargain and the details of the charges.**

3.7    With a number of string cites and an accusation by Smith that ISL attempts to throw the Court "red herrings", ISL reiterates that Smith's claim for breach of contract is subject to proof and not ripe for consideration. Without citing this Court the law, Smith fails to point out to this Court that

exculpatory provisions in towing contracts are invalid as a matter of the general Maritime law.[1] *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, (1955). Therefore, the language in the TOWCON which provides that "any losses are for the sole account of the hirer" as alleged by Smith in its original motion, are invalid. Moreover, circumstances of a loss or damage that would not ordinarily have occurred create a presumption that the towing vessel (in this case, ELSBETH II) has breached its duty to prudently navigate the flotilla. *Bisso v.. Waterways Transportation Company, Inc.*, 235 F.2d 741 (5th Circuit 1956). *W.P. Horace Williams Company v. Wakulla*, 109 F.Sup. 698, (E.D. Louisiana 1953), affirmed 213 F.2d 27 (5th Circuit 1954). Again, the loss of a U.S. Naval warship ought not to have occurred.

3.8   ISL takes offense to the fact Smith continues to spit out string citations with general principles of law without regard to application to the facts and circumstances of each holding and fails to point out unfavorable law which it is obligated to do.

### IV.

### CONCLUSION

4.1   The policy behind Robins Dry Dock is certainly a good one. The physical consequences of negligence can be limitless and virtually open ended. However, Robins Dry Dock, as interpreted by the 5th Circuit in the <u>Bosner</u> and <u>Domar</u> cases finding a proprietary interest establish that the rule cannot be used to circumvent a party's contractual responsibility not to negligently, intentionally or fraudulently damage the property which is the subject of the contract. Such damages are clearly foreseeable to contracting parties. A holding contrary to fact patterns in the <u>Bosner</u>, <u>Domar</u> and

---

[1] The Rule can effectively be avoided when there exists cross-insurance with waivers of subrogation, but that is not the situation here. *Dow Chemical v. M/V ROBERTA TABOR*, 815 F.2d 1037 (5th Cir. 1987).

Showa Line cases would lead to a travesty of justice: a towing contractor could contractually exculpate itself from liability (contrary to general Maritime law) for any damage to any tow to any party for any reason. In crafting the rule of Robins Dry Dock, the Supreme Court could have never intended the Rule to be distorted to lead to such a result. The 5th Circuit's decisions in Bosner, Domar and the Showa Line cases are the closest in point and will lead to a just result and give ISL the opportunity to prove its case at the trial of this action.

## V.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays Defendants' Motion for Summary Judgment be denied, and for all and other further relief at law or in equity to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**

By: /s/ [signature]

James H. Hunter, Jr.
State Bar of Texas No. 00784311
Federal I.D. No. 15703
Ewing E. Sikes, III
State Bar of Texas No. 00794631
Federal I.D. No. 19534
Attorneys for Plaintiff,
**INTERNATIONAL SHIPBREAKING LIMITED, L.L.C.**

Of Counsel:

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**
P.O. Box 3509
Brownsville, Texas 78523-3509
Telephone: (956) 542-4377
Telecopier: (956) 542-4370

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of **SEPTEMBER, 2001**, a true and correct copy of the foregoing served via **CERTIFIED MAIL - RRR** on the following counsel of record:

Mr. Jeff Bale and Mr. Justin Renshaw
Eastham, Watson, Dale & Forney, L.L.P.
20th Floor, Niels Esperson Building
808 Travis Street, 20th Floor
Houston, TX 77002

_____
Of ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.