U.S. COURT OF APPEALS
**FILED**

JUN 1 1 2002

CHARLES R. FULBRUGE III
CLERK

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

---

No. 01-41245

(Summary Calendar)

United States District Court
Southern District of Texas
FILED

AUG 0 2 2002

Michael N. Milby
Clerk of Court

INTERNATIONAL SHIPBREAKING LIMITED LLC,

Plaintiff-Counter Defendant-Appellant,

versus

L C SMITH; TUG ELSBETH II, her engines, tackle, etc. in rem,

Defendants-Appellees,

and

SMITH MARITIME

Defendant-Counter Claimant-Appellee.

---

Appeal from the United States District Court
For the Southern District of Texas
USDC No. B-01-CV-48

---

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

International Shipbreaking Limited LLC ("ISL") appeals the district court's partial grant of summary judgment in favor of Smith Maritime ("Smith") dismissing all of ISL's claims and granting summary judgment to Smith on one of its counterclaims. ISL also appeals the district court's order denying its motion to amend its complaint. ISL has failed to show that triable issues of fact exist with respect to any of its claims or that the district court erred as a matter of law by granting summary judgment in favor of Smith. ISL has also failed to show that the result in this case would have been different had it been permitted to amend its complaint prior to the district court's summary judgment ruling. We therefore affirm. The motions that have been carried with this case are both denied.[1]

This case arises out of the sinking of a naval destroyer during towage. The United States Navy entered a contract with ISL ("the Navy contract") for the dismantling of two of its decommissioned destroyers, the USS COCHRANE and the USS STODDERT. Pursuant to the Navy contract, ISL was responsible for dismantling the ships, disposing of hazardous waste, and selling scrap materials. As part of its contractual obligations, ISL was also responsible for towing both ships from Pearl Harbor, Hawaii to its facility in Brownsville, Texas and for purchasing insurance for the vessels.

Thereafter, ISL entered into a contract with Smith Maritime ("the Towcon") for towage of

---

[1] While this appeal was pending, Smith filed a motion for partial dismissal, arguing that this court lacks jurisdiction to review the district court's denial of ISL's motion to amend its complaint because it is an interlocutory order. Because the district court's ruling on this motion may have affected its decision to grant summary judgment to Smith on ISL's claims, we have jurisdiction to review it. *See Cal. Advocates for Nursing Home Reform v. Creekside Care Convalescent*, No. 97-15398, 1998 WL 75831, *3 (9th Cir.) (unpublished opinion) (citing *Nat'l Am. Ins. Co. v. Certain Underwriters*, 93 F.3d 529, 540 (9th Cir. 1996)). Thus, Smith's motion for partial dismissal is denied. ISL's request for attorneys' fees incurred as a result of responding to the motion to dismiss is also denied.

the destroyers from Pearl Harbor to Brownsville. Smith then dispatched its tug to Pearl Harbor to tow the destroyers in tandem to Brownsville. Approximately two weeks into the tow, a crewmember aboard the tug alerted the crew that the USS STODDERT appeared heavy with a starboard list. Later that morning, one-third of the USS STODDERT's main deck aft was reported to be awash and the bow was elevated. The tow wire was then cut.

For the next few hours, the tug stood by until the weather cleared enough for a salvage party to board the ship and assess the situation. Smith contacted the United States Coast Guard, the United States Navy, and ISL to discuss their options. Thereafter, Smith directed the tug's captain to order all hatches opened to allow the USS STODDERT to sink. The USS COCHRANE was delivered to ISL in Brownsville.

ISL then filed suit against Smith for negligence in the towing of the destroyer and breach of the warranty of workmanlike service implied in the contract between ISL and Smith. In its answer, Smith counterclaimed that ISL breached its contract with Smith due to its failure to pay the final installment due to Smith under the contract and the unseaworthiness of the tow. Smith then filed a motion for summary judgment on ISL's claims and its counterclaims. After Smith filed its motion for summary judgment, but before the district court ruled on the motion, ISL filed a motion to amend its complaint. The district court then granted in part Smith's motion for summary judgment. In a separate order, the district court denied ISL's motion to amend its complaint on the ground that it would not change the outcome of the summary judgment order. ISL appeals both rulings.

We review a district court's grant of summary judgment de novo. *McClendon v. City of Columbia*, 258 F.3d 432, 435 (5th Cir. 2001). We will affirm a district court's grant of summary judgment when, viewing the evidence in the light most favorable to the nonmoving party, the record

-3-

reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). We review a district court's denial of a motion for leave to amend its complaint for abuse of discretion. *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).

ISL first argues that the district court, when ruling on Smith's summary judgment motion, failed to address its intentional tort and fraud claims. This argument has two subparts. First, ISL argues that it included sufficient allegations of intentional conduct in its original complaint to put Smith on notice of its intentional tort claim. Alternatively, ISL argues that, had the district court allowed ISL to amend its complaint, it would have clarified its intentional tort claim and added a new fraud claim.

After reviewing ISL's original complaint, we agree with the district court that ISL did not sufficiently plead an intentional tort claim. In its original complaint, ISL states that "Plaintiff's claim is for *negligence* and *breach of warranty of workmanlike service*." The only reference to intentional conduct was made in a separate paragraph of the complaint: "During the voyage, the USS STODDERT was lost and/or was intentionally scuttled in the Pacific Ocean *due to the negligence and breach of warranty of workmanlike service* provided by Smith, its tug, and its crew. Although the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure do not require an inordinate amount of detail or precision, we believe this single reference to intentional conduct couched in negligence and breach of warranty claims was insufficient to put Smith on notice of an intentional tort claim. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir. 2000) (stating that although a complaint does not need to include "magic words" to allege a claim, it must state factual allegations from which a claim conceivably could be made); FED. R. CIV. P. 8 (requiring

only "a short and plain statement of the claim showing that the pleader is entitled to relief").

We have also reviewed ISL's amended complaint to determine whether it would have changed the outcome on summary judgment. In its amended complaint, ISL adds more references to "intentional acts" and "fraud." ISL still fails, however, to allege sufficient intentional conduct entitling it to relief.[2] ISL also fails to make any attempt to plead its new fraud claim with particularity, as required by the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 9 (requiring pleader to state the circumstances constituting fraud with particularity). Even assuming ISL's amended complaint satisfied the notice pleading requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure, ISL failed to present sufficient summary judgment evidence to create a fact issue for the jury.[3] As a result, we conclude that the district court did not abuse its discretion when it denied ISL's motion to amend its complaint. *See Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 667 (5th Cir. 1981) ("Clearly, if the complaint as amended would still be subject to dismissal, no abuse of discretion occurs when the amendment is denied.").

Second, ISL argues that the district court erred when it dismissed its negligence claim against Smith based on the rule stated in *Robins Dry Dock & Repair Co. v. Flint*. In *Robins Dry Dock*, the Supreme Court held that, in maritime law, where a claimant sustains no physical damage to property

---

[2] In its brief on appeal, ISL attempts to clarify its claim based on "intentional acts" as a claim for intentional interference with contractual relations. We find no reference to a claim for intentional interference with contractual relations in any of ISL's submissions to the district court, including ISL's response to Smith's summary judgment motion. Because ISL makes this argument for the first time on appeal, it is waived. *Vogel v. Veneman*, 276 F.3d 729, 733 (5th Cir. 2002).

[3] The only evidence in the summary judgment record supporting ISL's sabotage theory is the affidavit of a crew member of the tug consisting largely of speculation and hearsay. *See* Fed. R. Civ. P. 56(c) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

in which it has a proprietary interest, no recovery is available for economic losses where a maritime tort is unintentional.[4] ISL argues that the rule stated in *Robins Dry Dock* does not apply here because, by virtue of its contract with the Navy, it had a non-ownership proprietary interest in the USS STODDERT at the time the ship sank.

We have previously recognized a narrow exception to the rule stated in *Robins Dry Dock* for certain non-ownership proprietary interests. In *Bosnor S.A. de C.V. v. Tug L.A. Barrios*, we held that a bareboat charterer had a sufficient proprietary interest in the damaged property to state a cause of action for its economic losses. 796 F.2d 776 (5th Cir. 1986). We reasoned that "[a] bareboat charterer stands in the shoes of the owner of the vessel for the duration of the charter and is responsible for managing and maintaining the ship." *Id.* at 783. If the vessel is damaged, the bareboat charterer is ordinarily responsible to the shipowner for the damage; in essence, the shipowner retains only a right of reversion. *Id.; see Torch, Inc. v. Alesich*, 148 F.3d 424, 427 (5th Cir. 1998) ( "The essence of a bareboat charter is the complete surrender of possession and control by the vessel owner to the charterer."). ISL argues that, under its contract with the Navy, its responsibility for the USS STODDERT was analogous to that of a bareboat charter and thus the exception to *Robins Dry Dock* applies.[5]

---

[4]*Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927) (holding that time charterer, who did not have a significant property interest in the ship at issue, could not maintain a negligence action against dry dock company for delaying in the performance of repairs to the ship and preventing the time charterer from operating the ship); *see Reserve Mooring Inc. v. Am. Commercial Barge Line L.L.C.*, 251 F.3d 1069 (5th Cir. 2001) (holding that a mooring operator was precluded from recovering economic damages from a barge owner who, by sinking its barge, blocked vessels from mooring there, in the absence of physical damage to the mooring facility).

[5]To support its contention that it had a proprietary interest in the USS STODDERT, ISL notes that it "gained possession and control" of the USS STODDERT from the Navy, that it was responsible under its contract with the Navy to procure and maintain insurance for the ship, that it

After reviewing the evidence in the summary judgment record, we find ISL's obligations under the Navy contract insufficient to create a non-ownership proprietary interest in this case. Contrary to ISL's assertions, the Navy did not surrender complete control of the vessel to ISL in the Navy contract, but specified the manner in which ISL was to perform its contractual duties. More importantly, the Navy retained substantial financial responsibility for the USS STODDERT. The Navy contract required that both the ISL and the Navy be named as co-insureds, stated that the cost of insurance was included in the contract payment to ISL, and provided that the Navy would indemnify ISL for losses not compensated for by insurance. Based on the Navy's continued responsibility for these liabilities, ISL cannot fairly be said to possess a proprietary interest in the USS STODDERT. Rather, ISL's interest in the USS STODDERT was limited to its economic expectation under its services contract with the Navy. As a result, the district court properly granted summary judgment in favor of Smith on ISL's negligence claim.

Third, ISL argues that the district court erred when it dismissed its claim for breach of the warranty of workmanlike service implied in the Towcon.[6] According to the district court, the Towcon did not contain such an implied warranty because the parties explicitly provided for the allocation of risks between them.[7] ISL suggests now that we should imply a warranty of

---

was solely responsible for towing the ship from Pearl Harbor to Brownsville, and that it had control over the dismantling of the ship and the disposal of scrap material and hazardous waste.

[6] *See Stevens v. East-West Towing Co.*, 649 F.2d 1104 (5th Cir. 1981) (recognizing an implied warranty of workmanlike service in a towing contract).

[7] Specifically, the court noted that the parties, both commercial entities and sophisticated contractors, contracted as follows:
> The following shall be for the sole account of the Hirer [ISL] without any recourse to the Tug Owner [Smith], his servants or agents, whether or not the same is due to breach of contract, negligence or any fault on the part of the Tugowner, his servants

workmanlike service because the risk allocation provision relied upon by the district court is against public policy and void. *See Bisso v. Inland Waterways Corp.*, 349 U.S. 85 (1955) (holding that a party may not insulate himself from all liability caused by his own negligence).

After reviewing the Towcon and the relevant case law, we agree with the district court's conclusion that the Towcon does not include a warranty of workmanlike service. Specifically, we agree with the district court's reasoning that Smith and ISL, both commercial entities, were free to allocate contract risks between themselves and to disclaim implied warranties. *See Employers Ins. of Wausau v. Suwannee River Spa Lines*, 866 F.2d 752, 764 (5th Cir. 1989) (stating that, in a commercial context, parties are generally capable of allocating the risk of defective performance of a contract for services). Moreover, we note that the provision at issue here differs from the provision invalidated in *Bisso* because it does not shelter Smith from *all* liability. Rather, Smith retained substantial exposure to liability vis-a-vis an identical provision allocating risk of damage to the tug to Smith "whether or not the same is due to breach of contract, negligence or any fault on the part of the Hirer [ISL]." We have previously upheld exculpatory provisions where a party has retained sufficient exposure to liability to deter negligence. *See Todd Shipyards Corp. v. Turbine Serv. Inc.*, 674 F.2d 401, 410 (5th Cir. 1982) (upholding red letter clause limiting defendant's liability for negligence and breach of contract to $300,000). Because the contract between ISL and Smith did not contain an implied warranty of workmanlike service, the district court properly granted summary judgment in favor of Smith on this claim.

---

    or agents:
    (1)    loss or damage of whatsoever nature, howsoever caused to or sustained by the tow.

Finally, ISL argues that the district court erred when it granted summary judgment in favor of Smith on its breach of contract counterclaim. Specifically, ISL argues that it was relieved of its obligation to pay the final installment under the contract because Smith breached the Towcon when it sank the USS STODDERT. We have already determined that ISL's breach of contract claim fails because the contract between Smith and ISL did not contain an implied warranty of workmanlike service. Moreover, as the district court noted, the fact that the USS STODDERT sank before the completion of towage did not relieve ISL of its obligation to pay the final installment to Smith. The parties contemplated the risk of loss of the tow and expressly provided that payment was due "without any discount, deduction, set-off, lien, claim or counterclaim . . . fully and irrevocably earned at the moment it is due . . . Tug and/or Tow lost or not lost."[8] Because ISL expressly bargained for the undertaking and not the result, it was obligated to make its final payment on the contract regardless of the sinking of the USS STODDERT. Thus, the district court properly granted summary judgment in favor of Smith on its counterclaim.

For the foregoing reasons, the district court's partial grant of summary judgment in favor of Smith is AFFIRMED. Smith's motion for partial dismissal and ISL's motion for attorneys' fees are DENIED.

---

[8] We also note that the USS COCHRANE was successfully towed by Smith to Brownsville, Texas.